# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| HITACHI MEDICAL SYSTEMS AMERICA, INC., | ) ) ) | CASE NO. 5:09CV932 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) ) | OPINION AND ORDER |
| LIVINGSTON MRI, LLP, | ) ) ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of Defendant Livingston MRI, LLP ("Defendant" or "Livingston") to enforce the settlement. (Doc. No. 35.) The matter is fully briefed and ripe for decision.

**Background**

Plaintiff Hitachi Medical Systems America, Inc. ("Plaintiff" or "Hitachi") entered into a series of service agreements with Defendant for the "inspection and maintenance of certain medical equipment previously purchased and/or leased by Defendant […]." (Doc. No. 1, Compl. at ¶¶ 5, 8.) On April 23, 2009, Plaintiff brought suit against Defendant, alleging that Defendant failed to make payments for the service, as set forth in the parties' agreements. (*Id*. at ¶ 15.) The Complaint raised claims for breach of contract and unjust enrichment (*Id*. at ¶¶ 14-21), and also requested a declaration as to Defendant's liability. (*Id*. at ¶ 24.)

After a period of discovery, the parties reached a global settlement, resolving all claims in the Complaint. The settlement was reduced to a written settlement agreement ("the Settlement Agreement"), which the parties memorialized on November 17, 2009. (Mot., Ex. A, Settlement Agreement.) There are two components to the Settlement Agreement. The first part addresses the payment by Defendant of a lump sum, to be paid in monthly installments. (*Id*., § A.) The second part creates a new service maintenance agreement, whereby Hitachi is to provide service for Livingston's Magnetic Resonance Imaging (MRI) System and CXR4 Multi-Slice CT for a period of one year, beginning November 1, 2009 through October 31, 2012. (*Id*., § C.) In exchange for the service, Defendant is to make periodic payments. (*Id*., § C(a) and (b).) It is the timing of these service payments that is at the heart of Defendant's motion to enforce.

Defendant made its first service payment on November 30, 2009. According to Defendant, this payment was intended to cover service on its medical equipment for the month of November. Defendant made a second payment under § C of the Settlement Agreement on December 30, 2009. Defendant believes that this payment covered service for the month of December.

The parties agree that Plaintiff serviced Defendant's equipment on December 10, 2009. According to Defendant, however, Plaintiff has refused to perform any subsequent service maintenance because it believes that Defendant is delinquent in its service payments.[1] (Mot., Ex. B, Declaration of Philip Conkright at ¶¶ 5, 12.)

---

[1] There is no dispute that, as of the date of the filing of the motion to enforce, Defendant was current in its lump sum payments under § A of the Settlement Agreement.

2

Following Plaintiff's alleged refusal of service, Defendant filed the present motion to enforce.[2] In its motion, Defendant maintains that Plaintiff has no right to refuse to service Plaintiff's MRI and CT machines because Defendant is current in its service payments. Plaintiff insists, however, that, under the terms of the Settlement Agreement, Defendant should have made two service payments in the month of November: one for service for November, and a second to cover service for December.

**Discussion[3]**

The Court begins by observing that "settlement agreements are highly favored by the law." *Hite v. Leonard Ins. Servs. Agency*, 2000 Ohio App. LEXIS 3799, at *7 (Ohio Ct. App. 9th Dist. Aug. 23, 2000) (citing *State ex rel. Wright v. Weyandt*, 50 Ohio St. 2d 194, 197 (1977)). Where the language of a settlement agreement is clear, and it was entered into by the parties voluntarily, the court must enforce the instrument as it is written. *See Clark v. Clark*, 2009 Ohio App. LEXIS 2359, at *5 (Ohio Ct. App. 12th Dist. June 15, 2009). *See also Hybud Equipment Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St. 3d 657, 665 (1992). Moreover, because a settlement agreement is a contract, it is subject to the same law that governs the interpretation of contracts. *Chirchiglia v. Adm'r, Bureau of Workers' Comp.*, 138 Ohio App. 3d 676, 679 (Ohio Ct. App. 7th Dist. 2000).

---

[2] This is the second motion filed by the parties regarding the settlement. On November 13, 2009, Plaintiff filed a motion to enforce the Settlement Agreement. (Doc. No. 28.) In an Opinion and Order, dated April 1, 2009, the Court granted Plaintiff's motion. (*See* Doc. No. 39.) The present dispute over the terms of the Settlement Agreement is, in no way, related to Plaintiff's prior motion to enforce.

[3] All written materials relating to the present dispute, including the motion, briefs, and the Settlement Agreement, have been filed under seal because the terms of the Settlement Agreement are confidential. In ruling on the present motion, the Court has made every effort to honor the parties' request that the settlement terms remain confidential. Toward this end, any contract terms that do not necessarily affect the Court's disposition of the present motion have been intentionally withheld from this Opinion and Order.

The role of the court in contract interpretation is to give effect to the parties' intent, *City of St. Marys v. Auglaize County Bd. of Comm'rs*, 115 Ohio St. 3d 387, 390 (2007), which is presumed to lie within the four corners of the agreement. *Kelly v. Medical Life Ins. Co.*, 31 Ohio St. 3d 130, 132 (1987) (citing *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St. 2d 244, ¶ 1 of syllabus (1974)). If the terms of the contract are clear and unambiguous, the court is to give the terms their plain and ordinary meaning. *City of St. Marys*, 115 Ohio St. 3d at 390 (citing *Nationwide Mut. Fir Ins. Co. v. Guman Bros. Farm*, 73 Ohio St. 3d 107, 108 (1995)). *See Alexander v. Buckeye Pipeline Co.*, 53 Ohio St. 2d 241, 245 (1978).

The question of whether a contract term is ambiguous is a matter of law for the court. *Ohio Historical Soc. v. General Maintenance & Engineering Co.*, 65 Ohio App. 3d 139, 146 (Ohio Ct. App. 10th Dist. 1989). A contract term is ambiguous if its meaning cannot be deciphered from reading the entire contract, or if the terms are "susceptible to two or more reasonable interpretations." *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d 45, 55 (Ohio Ct. App. 2d Dist. 1998). In contrast, "a contract is unambiguous if it can be given a definite legal meaning." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St. 3d 306, 308 (2007). *See Werner v. Progressive Preferred Ins. Co.*, 533 F. Supp. 2d 776, 781 (N.D. Ohio 2008).

With these principles in mind, the Court turns to the Settlement Agreement. Section 3(2), relating to service payments, provides, in pertinent part:

> Livingston will pay to HMSA, pursuant to the new Service Maintenance Agreement:
>
> > (a) During the period of November 1, 2009 through October 31, 2012; [sum certain amount] annually, payable monthly

4

>> in advance, in twelve (12) equal installments of [sum certain amount] each […].

(Settlement Agreement, § C(2)(a).)

Plaintiff believes that the proper interpretation of § C(2)(a) is that it requires Defendant to make monthly installment payments throughout the term of service, and that the phrase "in advance" means that Defendant must make each payment in advance of each month during the service term. However, because the Settlement Agreement was entered into during the first month of service—November 2009—Defendant could not make the payment for November's service "in advance," i.e. in October 2009. Thus, Plaintiff maintains that Defendant should have made two payments in November to cover service for November and December.

In contrast, Defendant insists that the "in advance" language "only means that Livingston must make payments in advance of receipt of service, which Livingston did when its November payment preceded Hitachi's December service." (Mot. at 3.) The Court finds that Defendant's interpretation does not represent a reasonable interpretation of the contract term.

The first portion of text in § C(2)(a) provides that Defendant is to pay a sum certain for service during the service term. The language that follows clearly modifies this text by requiring that this sum certain for service is to be "payable monthly in advance," or, in other words, in monthly installments with each payment made in advance of each month during the service term. To find that the language "payable monthly in advance" refers to in advance of any service performed by Hitachi would require the Court to read additional language into the contract, something the Court is

5

prohibited from doing. *See Werner*, 533 F. Supp. 2d at 781 ("A court should not create an obligation not found in the contract's terms."); *Leigh v. Crescent Square*, 80 Ohio App. 3d 231, 235 (Ohio Ct. App. 2d Dist. 1992) ("It is widely held that courts may not imply additional terms in a contract or agreement where none clearly exists."); *Uram v. Uram*, 65 Ohio App. 3d 96, 99 (Ohio Ct. App. 9th Dist. 1989) (a court "may not read language or terms into a contract").

Such an interpretation would also be inconsistent with the remaining provisions of § C. While the service payments are to be made "monthly," § C provides that the service, itself, is to be performed "quarterly."[4] It is impossible to accept Defendant's suggestion that the *monthly* payments were to be made prior to service, when the Settlement Agreement clearly provides that the service is to be performed *quarterly*. Under Defendant's interpretation, it could make a payment any time prior to receiving quarterly service. To endorse such an interpretation would require the Court to vitiate the clear requirement that the payments are to be made monthly.[5] Instead, the Court finds that the clear and unambiguous language of the Settlement Agreement provides for twelve monthly payments for service, with each payment due in advance of each month during the service term.

The confusion as to the payment for the first month of service (November 2009) arises not from any ambiguity in the language of the Settlement Agreement, but

---

[4] Specifically, § C(4) provides, in relevant part: "HMSA shall provide, on a QUARTERLY basis, Preventative Maintenance ("PM") services to Livingston for the Equipment between the hours of 8:00 a.m. and 5:00 p.m. […]." (Settlement Agreement at § C(4) (emphasis in original).)

[5] Plaintiff's interpretation would also write out of the contract the requirement that the sum certain amount for service be made in 12 installments. If the payments need only be made before the quarterly service is received, Plaintiff could make as few as 4 payments.
\

6

rather from the contract's silence as to date that this initial service payment was to be made. In § A, which sets forth the terms for the lump sum payment, the Settlement Agreement specifically provides that the initial installment is to be made "within one (1) business day after full execution of this Agreement […]." (*See* Settlement Agreement, § A(3).) Unfortunately, no such provision was made for the first monthly service payment.

"A contract's silence does not necessarily mean that the contract is ambiguous." *Werner*, 533 F. Supp. 2d at 781. *See Statler Arms, Inc. v. APOCA*, 700 N.E.2d 415, 421 (Ohio Ct. Comm. Pleas Cuy. Cty 1997) ("The fact that a contract […] is silent on a particular point does not make it ambiguous.") Rather, "if a contract is silent on a certain point, the law will imply an obligation to carry out the purpose for which the contract was made." *Bank of N.Y v. Janowick*, 470 F.3d 264, 271 (6th Cir. 2006) (applying similar Kentucky common law regarding the interpretation of contracts, with emphasis on discerning the intent of the parties). *See, e.g., East Ohio Gas Co. v. Akron*, 81 Ohio St. 33, 54 (1909) ("While the courts will give effect to that which clearly appears to be the intention of the parties, […] the court […] must take great care that [it] do[es] not make the contract speak where it was intentionally silent […].")[6]

Because the Settlement Agreement was entered into during the first month of the service term, it would have been preferable for the parties to have set a date certain for that first service payment, as they had with the first installment payment. Nonetheless,

---

[6] The Court is not to create a new contract for the parties where there is silence in the agreement. *Savedoff v. Access Group*, *Inc.*, 524 F.3d 754, 764 (6th Cir. 2008) "Rather, '[t]he parties to a contract are required to use good faith to fill the gap of a silent contract.'" *Id.* (citing *Burlington Res. Oil & Gas Co. v. Cox*, 133 Ohio App. 3d 543, 547 (Ohio Ct. App. 4th Dist. 1999)). "What the duty of good faith consists of depends upon the language of the contract in each case which leads to an evaluation of reasonable expectations of the parties. *Id.* (internal citation omitted).

the Court must give effect to the parties' intent contained within the Settlement Agreement. In light of the fact that the Settlement Agreement contemplates monthly service payments "in advance" of the service month, and Defendant clearly could not have made the November 2009 service payment "in advance" of November 2009, the only reasonable conclusion can be that Defendant should have made two service payments in the month of November 2009: one to cover the service payment for the first month of the service term and a second payment "in advance" for the service fee for December 2009. To construe Defendant's December 30, 2009 payment as covering the service fee for December 2009 would obliterate the requirement that the monthly payments be made "in advance" of the service month.

Therefore, for the foregoing reasons, Defendant's motion to enforce the Settlement Agreement is **DENIED**. Further, while the Court finds that Defendant is delinquent in its payments under the Settlement Agreement, the Court trusts that Plaintiff will afford Defendant a reasonable period of time in which to cure the delinquency, while continuing to honor its obligations under the Settlement Agreement. Toward that end, the Court shall conduct a telephonic status conference on June 16, 2010 at 3:00 p.m. to discuss the plan for putting the settlement back on track.[7] Prior to the conference, the parties are encouraged to work together to reach a consensus as to how they will proceed. Moreover, because the Court finds that both sides contributed to the present dispute via a lack of attention to detail in the drafting of the Settlement Agreement, Plaintiff's request

---

[7] Counsel for Plaintiff shall initiate the call. When all of the participants are on the line, counsel shall contact the Court.

for attorney's fees and costs associated with defending Defendant's motion is also **DENIED**.

       **IT IS SO ORDERED**.

Dated: June 11, 2010

                                          **HONORABLE SARA LIOI**
                                          **UNITED STATES DISTRICT JUDGE**